# EXHIBIT

# B

CIVIL NO. 91-00147 DAE-KSC
USA vs. STATE OF HAWAI'I, et. al.
ELEVENTH REPORT AND RECOMMENDATION

**Gail Hanson-Mayer APRN, BC, MPH**
**Sterling Resources LLC**
**26 Eastern Ave**
**Lexington, MA 02421**
gailhmayer@aol.com

January 17, 2006

Magistrate Judge Kevin SC Chang
PJKK Federal Building
300 Ala Moana Boulevard C-209
Honolulu, HI 96850

Dear Judge Chang,

At your request, on December 5-9, 2005, an evaluation was conducted of the Hawaii Department of Health, Adult Mental Health Division [AMHD] to determine progress in compliance with the Plan for Community Mental Health Services related to U.S. V. State of Hawaii, Civil No. 91-00137-DAE-KSC that was developed by the Special Master and signed by Judge Ezra on January 23, 2003. This was the sixth evaluation conducted since the Plan was implemented. The purpose of this site visit was to assess the progress of AMHD with regard to meeting compliance with the Community Plan as of December 2005. Findings and recommendations contained in this report are based on tours of selected AMHD operated community-based and contracted services in Oahu County, a review of documents provided by AMHD, medical record reviews, and interviews held with consumers, families and advocates. Meetings with the AMHD Leadership Team, AMHD Staff and employees of AMHD contracted provider services organizations were scheduled throughout the visit. This survey was conducted as a team. The following report is to be reviewed in conjunction with the report from my colleagues, the expert psychiatrist, Kenneth Minkoff MD and the expert administrator Dr Paul Gorman. This expert will also report on areas that will additionally be covered by Drs. Minkoff and Gorman.

Hanson-Mayer, Gail-Community Plan Report 01.17.06                                    1

## DATA BASE

### AMHD documents requested for review

United States v. State of Hawaii, et el., Civil No. 91-00137 Tenth Quarterly Report on Community Plan Implementation, including attachments.
Updated AMHD Functional Organization Chart with current names for each position or indicate if someone is temporarily assigned and/or if the position is vacant.
Minutes for the following meetings from 07/05-10/05:

     Executive Team Meetings
     CMHC Staff Meetings
     CMHC Leadership Meetings
     CMHC Medical Directors Meetings
     Forensic SWIT Meetings
     PSR SWIT Meetings
     Quality Improvement Council Meetings
     Meetings with Provider Groups on Oahu and the Island of Hawaii
     UM, PM, Access, QI Steering Committee

Minutes for any new administrative meetings that have been implemented since 09/05-11/05.

SAA Quarterly Reports from 07/05-11/05.
Most recent Target Population Reports: Annual Report, Initial Reports, Service Utilization Reports, Treatment Services Report. Include list of current Target Population.
Information on patients discharged from HSH and Kahi from 06/05-10/05 that indicates community discharge plan, follow-up appointments and placement.
Data from ACCESS Center on call volume by Island, disposition of calls, call follow-up, abandonment rates from 06/05-11/05.
Complaint tracking and resolution report regarding ACCESS Center from 07/05-11/05.
Monthly reports on treatment authorizations for September 2005 for ICM, ACT, TCM, CSM and CMO.
Copies of any AMHD Directives issued by Dr Hester from 07/05-10/05.
List of Forensic Coordinators by CMHC.
List of MISA Coordinators by CMHC.
List of Case Management Coordinators by CMHC.
AMHD quality monitoring reports for POS Providers and hospitals from 06/05-11/05.
AMHD Quality Management Reports regarding treatment planning from July-October 2005.
Copies of all updated AMHD policies (draft or approved) from 06/05-10/05.
PSR Programming development throughout AMHD system of care from 06/05-10/05.
Copies of ACT Fidelity Monitoring Tool implemented since 06/05. Copies of any

Hanson-Mayer, Gail-Community Plan Report 01.17.06         2

reports generated.

Minutes of meetings with SAA's and Service Area Boards for Oahu and the Island of Hawaii from 06/05-10/05.

Copy of AMHD consumer and provider complaint log and follow up action from July- September 2005.

Copies of minutes from any meetings with Courts and Corrections, Public Safety Division, Judiciary, and AMHD Forensic Director.

Copies of most recent tracking report for Consumers with forensic statuses.

Polices and procedures developed since 06/05 regarding CR/forensic status tracking.

Status report of any development of model court orders.

Status report of any program development and program implementation* in the following area: Community (outpatient) Fitness Restoration.

Status report of any program development and program implementation* in the following area: Conditional Release program / service development.

Status report of any program development and program implementation* in the following area: Jail/prison transfers program / service development.

Status report of any program development and program implementation* in the following area: Involuntary treatment and medication orders.

Status report of the development of proposed legislation for separate fitness evaluations and responsibility evaluations.

Status report of the development and implementation of the jail diversion program.

Status report of the development and implementation of forensic ACT team.

Status report of the development and implementation of community crisis teams.

Copy of any other Forensic Programming developed since 06/05 at HSH or in the Community.

If programs /services have been developed and implemented for items 21-30, please provide status of the development of a quality monitoring system specific to each area.

Treatment Planning schedule for each CMHC for the month of September 2005.

Copy of 3 new core competencies developed since 06/05.

Caseload data of Case Managers per CMHC and POS Provider from 06/05-10/05. Case management staffing guidelines.

Action plan for each CMHC with Performance Management Plan implementation.

UM Department monthly meeting minutes from 06/05-10/05. Any changes in policies or procedures. List of staff assigned to UM Department. Data reports tracking authorization requests and entries. UM Plan and UM Model description.

Staff Training schedules for the previous 6 months regarding treatment planning.

Crisis Stabilization vs. 23/59 Evaluation Report.

Listing of direct care positions hired at each CMHC since 06/05.

Listing of current staff vacancies at each CMHC.

Listing of current staff positions not yet established at CMHCs needed to come into compliance with the Community Plan.

Statewide action plan for clubhouse development.

Resumes / C.V.s of the following AMHD Staff: AMHD Medical Director, AMHD Chief of Clinical Operations, Crisis Services Director, Compliance Officer, Kauai SAA,

Performance Improvement Coordinator.
At Risk Screening Tool.
List of Work Teams with identified problems for each team.
AMHD Functions and Responsibilities Document.
Draft plan to sustain Mission, Values, Vision and Goals and philosophy.
Results of most recent Provider Survey.
Supervision Log example, Supervisor training orientation program.
Crisis Services Contract.
Guidelines for Crisis Management Fund.
Most recent Statewide Crisis Services Plan.
Sentinel Event Log 06/05-10/05.
Update on plan for movement of ACCESS Center to Pearl City.
Report on space procurement for E. Hawaii Puna Clinic. Tracking system report for
space requests.
Copy of most recent Forensic Point in Time Study.
Copy of Forensic study on Forensic hospital re-admissions.
Resumes / C.V.s of any new AMHD Forensic Staff hired since 06/05.

## Medical Records Reviewed:
Case Identification Numbers:



Additionally records were reviewed during site visits at the following locations:
Helping Hands Hawaii
North Shore
Kalihi-Palama CMHC

## Interviews and Site Visits

Dr Chiyome Fukino, State of Hawaii, Director of Health
Michelle Hill, Director of Behavioral Health, Division of Health, State of Hawaii
Dr. Thomas Hester, AMHD Chief
Dr. William Sheehan, AMHD Medical Director
Karen Krahn, AMHD Chief of Clinical Operations
Linda Appel, AMHD Service Area Administrator, Oahu County
Flo Dunn-O'Neal, AMHD Service Area Administrator, Hawaii County
Wayne Law, CMHC Systems Administrator
Reneau Kennedy, AMHD Forensic Director
Forensic Coordinators
AMHD Executive Team Meeting
Steve Balcom, AMHD Crisis Services Director
Pam Haina, AMHD Case Management Services Director
Cindy Means, AMHD Utilization Management Supervisor
Certified Peer Specialists
Case Management Coordinators
CMHC Managers
Staff Representatives from each Oahu CMHC
AMHD HSH/Kahi Oversight Team Meeting
Queen's Medical Center/AMHD monthly coordination meeting
North Shore ICM Team Meeting
Helping Hands Hawaii ACT Team Meeting
POS Provider Meeting, Behavioral Health Coalition
Meeting with Chad Koyanagi MD.
Kathleen Rhoades
Waipahu Clubhouse
Meeting with Oahu County Homeless/Crisis Services representatives.
North Shore ICM Team Meeting
Helping Hands Hawaii ACT Team Meeting
Peer Specialists Meeting

## Technical Assistance Meetings

Per the Court Stipulation, at the request of AMHD there were four (4) meetings
scheduled with the Evaluation Team and selected AMHD Staff to provide technical
assistance in the following areas:
Recovery Treatment Planning
Crisis Services
Continuity of Care
Quality of Care

## <u>FINDINGS</u>

This evaluation was conducted with the focus on the areas that were identified in my previous report of June 2005 that were behind the time line, or were due to be completed at the time of this site visit. The deadline for AMHD to meet substantial compliance with the Community Plan remains June 2006. However, it is important to note that on November 30, 2005 a revised Community Plan Implementation time line was submitted to the court and entered as an order. Therefore some areas that had December 05 due dates during the June site visit, now have due dates extending into 2006. This report will address the new court ordered time line due dates. As required by Judge Ezra's order granting an extension of the Community Plan, AMHD has developed an internal Action Plan which outlines how AMHD plans to attain compliance with the Community Plan by the revised dates. In my previous report I tried to be specific with my findings and recommendations so that AMHD would have ample time and opportunity to gain substantial compliance by June 2006. As of this evaluation, progress was noted in certain areas which will be discussed in more detail in this report. The hiring of key administrative positions, an activity integral to AMHD having the infrastructure in place to do the work necessary to meet compliance with the Plan, was accomplished. Although these recent hires were relatively new in their roles, it was evident upon meeting with them that they had the beginning working knowledge of the AMHD system of care and that the emphasis on meeting their responsibilities for implementing the elements of the Community Plan within their respective clinical and administrative areas were made clear by AMHD leadership. This was a hopeful sign that AMHD had acquired the capacity within the leadership team to move forward with the developing and implementing the outstanding elements of the Plan by the required Implementation Time Line task due dates. I would like to emphasize that my reports have consistently pointed to the fact that in order for AMHD to achieve these tasks, there were critical factors that needed to be addressed in a timely manner. I will briefly review the status of these areas that are required by the Plan and are instrumental in providing a clinically driven, sustainable, system of care.

### <u>*Development of AMHD infrastructure*</u>:
Under the direction of the AMHD Chief, Dr Hester, AMHD has produced a functional organizational chart which delineates the reporting and supervisory structure for the AMHD leadership team. Even though the functional organizational chart has a due date of 8/30/05, the chart has been a continuous, evolving document. The evaluation team has been presented with multiple draft versions of this document. Each version has represented significant changes to the structure. It is certainly within the purview of the senior leader to make recommendations to the court for redesign of the leadership structure to meet the functional needs of the organization. My concern at this date and time is that there has been a significant delay in defining and building the infrastructure which has impeded the ability of AMHD to make progress towards meeting the elements

of the Community Plan by June 2006. This concern has been discussed in each report written since the initial evaluation visit. With the functional organization chart not in compliance with the court order, with no request for modification of the order presented to the court, and six months left for substantial compliance, a new structure has been unveiled which on paper looks clear but in practice and upon interviews with staff continues to be confusing. This was particularly evident with respect to the members of the Executive Team. The evaluation team received inconsistent information from the AMHD Chief and the AMHD leadership group as to who were the members of the Executive Team.

It is important to note that the functional organization chart as presented to the evaluation team is out of compliance with the Community Plan. The chart represents a radical shift in how clinical services are reported and how each county maintains a voice within the leadership team. It has always been the goal for AMHD to be a clinically driven system of care which is focused on promoting the guiding principles set forth in the Community Plan throughout the system of care. It is critical for leadership to be structured so that this focus is paramount on a daily basis. In order for AMHD to meet the requirements of the Community Plan modification needs to be submitted and approved. I would encourage AMHD to clearly outline the reasons for this request since compliance time is running out. This is the last chance for AMHD to set the organizational structure. AMHD should be really quite certain that the proposed structure will lead them to meeting substantial compliance come June 2006.

The ability of AMHD to be responsive in the fiscal arena to concerns within the Provider community regarding financial operations continues to be a problem. The level of frustration that this presents particularly in the area of provider payments is significant. Provider agencies that provide a significant level of clinical services for AMHD clients have had to elevate their concerns above AMHD leadership in order to be paid. The new organizational chart includes the creation of a Chief Financial Officer Position (not required by the Plan) who will be responsible to oversee this area. Until the time this person is hired the current AMHD leadership is responsible to problem solve these issues and communicate the plan to the Providers. This is not a new finding. At varying times the system has been in the verge of breakdown due to lack of payment to the Providers. As the infrastructure develops one hopes that these problems will be solved at a lower level within the organization and not require the involvement of the AMHD Chief, in order to be resolved.

### AMHD Communication

My previous reports have stressed the need for AMHD to develop and strengthen their lines of communication both on an internal and external level. AMHD has demonstrated progress in this area in the development of written policies and standard operating procedures. There has been considerable time and attention to the detail of revising these documents so that the system can operate with greater clarity and consistency. Where the continued difficulty lies is in the ability of AMHD to communicate these policies and

Hanson-Mayer, Gail-Community Plan Report 01.17.06

procedures in an understandable fashion so that everyone operates on the same page. These documents include a significant level of specificity that is not always easily understood without clear instructions. This understanding comes in the form of system wide training and at times mentoring and requires patience. It is clear that everyone is working hard to try and accomplish this goal. The Service Area Administrators and Service Directors are to be commended for their efforts in trying to keep the community updated and informed.

Due to the rapid number of changes that have occurred it is important that AMHD take the time to ensure that the system understands where they are heading with regard to the planning process for clinical program development. The gaps in the delivery system are well known at all levels. AMHD has the responsibility to ensure that as new programs and services are rolled out, that the system is informed. This will be particularly important with the implementation of the new crisis service contract. The quality and availability of crisis services has been a concern that I have raised in my previous reports. At the heart of the crisis service system is the consumer. The procedural changes that will undoubtedly occur with a new vendor must be carefully communicated and closely monitored so that there are no barriers to care. AMHD is the holder of this responsibility. During the next evaluation I will be looking closely at the implementation of this contract and the impact on consumers.

### *Continuity of Care*

I have discussed previously the discontinuity that exists within the AMHD system of care. The Community Plan has produced a roadmap which outlines the development of clinical services at all levels of care. The lack of development and implementation of clear linkages between these services has impeded the ability of the consumer to move seamlessly throughout the varying levels of care. It is not enough for AMHD to have the services in place. The intent of the Community Plan is for there to be ease of access which includes a responsive system that encourages and promotes entry and does not look for ways to deny or limit services. It is difficult for any system to develop the trust that it inherently needs in order to operate effectively if there are not smooth mechanisms in place that empower the organization to work together towards providing exceptional clinical care in a continuous fashion. This starts at the point of entry. Whether it is making an appointment for an eligibility assessment or calling ACCESS in crisis the system needs to operate efficiently and effectively so that the consumer is unaware of any barriers in continuity. On several occasions I have met with the homeless service providers and they have spoken eloquently about their experience in calling to arrange an eligibility assessment or walk in appointment only to be told that there was a wait. One can imagine the frustration this presents for the homeless provider who knows they may not find the consumer again for a long time, who must communicate this to the consumer. Their window of opportunity to engage the consumer in treatment is often narrow. Although there is greater awareness on the part of AMHD that there is a need to eliminate the boxes that exist within the system of care, more work is necessary to make this happen. The pending implementation of a blended case management system is an

Hanson-Mayer, Gail-Community Plan Report 01.17.06                    8

example of how AMHD has responded and addressed the lack of continuity that exists within case management services as consumers move from one level of care to another. This when implemented will be a major step in the right direction.

## Clinical Case Reviews

In order to best determine the progress AMHD has made towards implementing the Community Plan, I reviewed a number of clinical cases which included Sentinel Event Reports, outpatient records and HSH Medical Records. The cases reviewed were target population members.

My review focused on evaluating how the system was responding to building the required components of the Plan and how these changes were impacting the actual care delivered. The following elements of the Community Plan were selected as they are not in compliance with the Community Plan at this point in time. Areas that were focused on and questions that I asked were:

1. Recovery Planning

Did each consumer have an individual service plan which met the requirements of the Community Plan?

Was there a crisis plan for each consumer and if so was the plan meaningful?

Was the community case manager a part of the discharge planning process and if so to what extent was their input valued?

2. Housing

Was the community placement appropriate for the consumer upon discharge?

3. Forensics

Was the Forensic Coordinator involved in the discharge planning?

Were the terms of the conditional release communicated to the consumer, case manager and Forensic Coordinator? Was there a plan developed for monitoring the individual on conditional release. Was the discharge placement appropriate for maintaining community safety?

4. Discharge Oversight

Did AMHD take steps to remedy concerns identified during the Sentinel Event Review process regarding the appropriateness of the hospital discharge that led to improvements for the consumer?

## Case #1

This consumer, AXIS 1 diagnosis Schizoaffective Disorder, Bipolar Type; Methamphetamine Dependence, was discharged from HSH with 415 legal status to ICM level of care with placement in a group home. Within 90 days of discharge from HSH the whereabouts of the consumer was unknown.

Upon review of the HSH discharge summary and sentinel event report the following

Hanson-Mayer, Gail-Community Plan Report 01.17.06                                    9

quality issues were evident and likely contributed to this client's non adherence to his discharge plan:

1. The Case Manager was on vacation at the time of discharge. The ICM Case Manager had limited contact with the consumer prior to discharge. There was no chance for the Case Manager to develop a relationship with this consumer that would promote successful community reintegration.

2. The Case Manager recommended and the Conditional Release stipulated that the client be placed in residential level of care. The history indicated that this consumer needed more structure in order to adhere to his treatment plan. The consumer was placed in a 24 hour group home. It was unclear why this happened from the record but one could surmise that a residential bed was unavailable at the time.

3. The medication dosage prescribed upon discharge was decreased at the time of initial psychiatric evaluation by the ICM physician. Communication regarding the medication and dosage was unclear from the group home to the ICM provider. This reduction in dose may have contributed to the change in behavioral status of the client which led to his disappearance from treatment.

4. The consumer had a positive urine drug screen prior to his disappearance which was reported to the Probation Officer. The Case Manager and Probation Officer met with the consumer and a change in treatment plan was developed. While awaiting transfer to a different program the consumer eloped.

This case illustrates how simple breakdowns in communication due to the lack of coordinated planning at the point of discharge led to this Sentinel Event. The process of involvement of the community case manager in the treatment planning process prior to discharge is critical. Although it is difficult to determine whether this would have impacted the outcome, it is clear that having the assigned case manager unavailable at the point of discharge to assist with the transition does not make clinical sense.

The placement of the consumer on conditional release is a component of the conditional release program that is as yet defined and implemented in the community. This item was due for completion on 11/30/05. AMHD is currently not in compliance with this element of the Community Plan. This is evidenced by multiple consumer treatment failures which have resulted in re-admission to HSH or incarceration. The increasing census at HSH is illustrative of this factor. This consumer was stipulated to be placed in residential setting. Instead the consumer was placed in a 24 hour group home which did not provide the necessary level of supervision for this individual. The consumer quickly violated the terms of the conditional release. Although the Case Manager did attempt to intervene by informing the Probation Officer and seeking inpatient hospitalization, the system wide capacity limitations did not allow for this consumer to immediately transition to a higher level of care.

The elements of the Community Plan with regard to treatment planning require that the ISP guide service delivery as the consumer changes providers within the system of care. Although the treatment planning implementation task is not due until 2/28/06, the

10

development of a system wide treatment planning process takes considerable time. With two months left to meet the Implementation Time Line due date, it is concerning that AMHD is still in the early stages of implementation. In this case, as the consumer moved from one level of care to another, the physician was not provided with the appropriate information regarding this consumer's medication regimen. One could assume that the reduction in medication dosage that occurred immediately after discharge led to an escalation in this consumer's behavior that led to this poor outcome.

## Case #2

This consumer, AXIS 1 diagnosis Schizophrenia, undifferentiated type, collapsed in a parking lot and died in the emergency room three days after discharge from an acute psychiatric unit of a community hospital. In addition to his psychiatric issues this consumer had significant medical problems. Prior to hospitalization the consumer was followed by an ACT Team and resided in an 8-16 hour group home. The Sentinel Event review indicated that the consumer had only marginally improved at the time discharge. The consumer's history included brandishing weapons. The consumer continued to evidence bizarre behaviors that were concerning while in the hospital. The discharge was precipitated by the denial of a community placement bed hold for this consumer by AMHD.

Although it is unclear whether the medical death would have occurred if the consumer had remained in the hospital, it is clear that this client was discharged precipitously for inappropriate reasons.

1. The consumer was discharged in a continuing state of decompensation without a plan in place that would provide 24 hour supervision.
2. The pressure to discharge the consumer was based on the fear that the consumer would lose the community based placement. It was unclear whether the denial for the bed hold had been appealed or elevated to a higher level within AMHD for discussion. In any case, premature discharge without a solid wraparound plan in place is not an acceptable plan nor does it meet the requirements for coordinated treatment planning in the Community Plan.
3. The records reviewed also did not evidence a crisis plan that included the involvement of the ACT Team and the provision of additional supports to maintain this individual in the community. Crisis plans are a required element of the treatment plan.

## Case #3

This consumer, AXIS 1 diagnoses Paranoid Schizophrenia; Cannabis Abuse, was discharged from HSH with 406/405 legal status. Within ninety days of discharge the consumer was incarcerated. The consumer was discharged to a community placement which was against the recommendation of the ACT Case Manager. Within twelve days of discharge the consumer was homeless, at which time he was admitted to an LCRS. The

consumer left the LCRS and shortly after was admitted to a local hospital for making suicidal threats. At the time of discharge there was no AMHD housing or placement available. This consumer was incarcerated due to revocation of bail. The consumer has a history of burglary, sexual assault and minimal insight into his impulsive behavior and poor decision making.

1. The Community Plan is explicit in the requirement for the involvement of the Case Manager in the treatment plan. In this case the ACT Case Manager had not participated in the interdisciplinary treatment planning process until late in the admission. The plan to discharge the consumer to a situation that was known by the case manager to not support recovery was inappropriate.

2. This consumer had a history of dangerousness including sexual offense. In reviewing the plan for this consumers discharge, there was no evidence that the process included communication or coordination with the Forensic Coordinator. This case illustrates that the gap in care coordination raises the concern that this consumer's ability to maintain safety in the community was seriously in question. The lack of community based forensic programs that provide placement, supervision and treatment, is not in line with the requirements of the Plan. The result for this consumer was incarceration.

## FORENSICS

During this evaluation it was most concerning to find that there was minimal progress towards implementation of forensic services within the community. In fact, in some areas there was a regression in progress previously gained. This was particularly evident with the lack of clarity on the part of the AMHD Forensic Director regarding responsibility for providing leadership in all areas within the Community Plan related to the development of forensics services. This finding was puzzling as the Community Plan and AMHD's own internal action plan clearly defines this. As a result progress with implementation has stalled significantly. This is also in part the result of the fragmentation that exists within the leadership team. For example, the forensic items that are specific to the CMHC's, the responsibility for operational development appears to sit with the CMHC Administrator, Wayne Law. While the development of standards of practice for these services sits with the AMHD Forensic Director, Dr Kennedy. This parallel process is not working. According to my colleague, Dr Minkoff, MISA services is further along than any other piece of the Service System development. The MISA Director has been able to figure out how to work within the system to solve these same dilemmas. It is essential that this occur with Forensic Director if there is any hope of meeting compliance in this area with the Community Plan in the near future. The lines of authority and responsibility for

12

forensic services need to be clearly spelled out at the senior leadership level in order for AMHD to move forward as a significant number of indicators are past due. There are a number of items in the Community Plan that require significant systems coordination across multiple agencies. The AMHD Forensic Director has been successful in developing linkages with the Courts and Corrections and Department of Public Safety. These linkages are less apparent within the AMHD operated clinical services.

At the time of the site visit all but three items in the Implementation Plan Time Line were due for completion. The majority of the items carried over from the HSH Remedial Plan to the Community Plan that were outstanding were due 11/30/05. It was difficult to evaluate the progress in these areas as the information promised at the site visit was not made available to the evaluation team. The initial documents received stated that a report would be generated and made available regarding six priority items during the site visit. These were: model court orders, involuntary treatment and medication orders, proposed legislation to separate fitness from responsibility, mental health court, evaluation of Jail Diversion, Forensic ACT Teams, Community Crisis teams and the location, level and timeliness of forensic services. This report was not made available during the site visit. In addition, during interviews conducted with Staff and Providers I found no evidence of progress in these areas. As a result, these areas are out of compliance with the 11/30/05 time line. Another area that is concerning is the lack of development of community based forensic programs which includes the conditional release program/service, the outpatient fitness program, and the jail diversion program. This was mentioned in my previous report as a priority for AMHD to focus their attention on. There has been considerable effort in developing policies and procedures and standards of practice that delineate these important components of a forensic service but the roll out of these programs has not occurred. These are past due the time line for implementation. It was very exciting to see that the **Forensic Coordinator position had been filled within each CMHC.** It was apparent that as a group the Forensic Coordinators had worked hard to develop and clarify their roles within each CMHC. This is evidenced by the significant increase in caseloads assigned to each Forensic Coordinator. The importance of involving the Forensic Coordinator with the treatment team particularly with high risk consumers discharged on conditional release was beginning to take hold. There continues to be gaps in communication but progress is being made at the CMHC level.

An indicator of the Community Plan that is completed is the development of a system to collect accurate and timely data for tracking those discharged on conditional release. The Plan also requires that an annual report is generated on the Target Population that includes the forensic status for each consumer. As of yet, AMHD has been unable to capture and report this data. The next annual report on the target population characteristics is due on 1/30/06. It is hoped that this report will include this information.

An area that is seriously behind the time line of the Community Plan is the completion of a plan to develop a secure forensic residential treatment program in the community. This was due 8/05. A report was previously generated by the AMHD Forensic Director that outlined several recommendations for the development of this secure residential facility. As of the site visit a response to this report was still pending. The AMHD Forensic Director reported that the state legislature did not approve the plan to build a secure forensic facility. Although the legislature did not approve the proposed plan no further information was shared as to the development of a program to replace the residential, or to modify the plan and re-submit to the legislature. The concern is that this appeared to be just dropped. This is particularly concerning in that the intent of the Community Plan to build forensic services in the community is the free up HSH beds for those who really need state hospital level of care.

## CASE MANAGEMENT AND SUPPORT SERVICES

The Case Management and Support Services has made progress towards meeting the requirements of the Community Plan. The Service Director, Pam Haina APRN, is to be acknowledged for her work in developing case management services throughout the State. At the time of the evaluation Ms Haina informed me that she had resigned her position. Although the position was filled at the time, a pending vacancy was imminent. The Plan requires this position to be in place.  AMHD needs to recruit and hire a replacement as soon as possible in order to continue the momentum towards meeting compliance by June 2006. If there is an extended vacancy it is likely that progress will be stalled.

It was exciting to hear about the proposal for a redesigned case management system that will allow the consumer to retain the same case manager throughout each level of care. The fragmentation that existed within the AMHD system of care has been a longstanding problem for the consumer. The model developed provides for a blended case management system that retains the frequency of case management contacts per level of service but changes the case management ratio to a combined 30:1 (consumer to case manager) formula. The Community Plan explicitly details service level ratios of consumer to case manager for Assertive Community Treatment (ACT), Intensive Case Management (ICM) and Targeted Case Management (TCM).  As this new model is implemented it will be important to align the case management ratios so that they fit within the Community Plan.  The assignment of cases will also be important to monitor to ensure that the case manager has a reasonable workload of cases as consumers move up and down levels of case management intensity. AMHD is to be credited for tackling this issue and developing a creative solution which will hopefully improve continuity of care.

During the evaluation visit and as discussed in previous reports there were areas identified that were not in compliance with the Plan within case management services

that remain an issue. **The caseload ratios for Case Managers continue to be out of compliance with those stipulated in the Plan although the data suggests movement in a positive direction.** Although the implementation time line indicates this is not due until April 30, 2006, this has been outstanding since the initial evaluation. The barrier for meeting compliance has been the approval of new case management positions and the subsequent recruitment and hiring. As of the evaluation visit the positions had been established. The focus is now on recruitment, hiring and retention. The data as presented, demonstrated significant variability across the CMHC's in meeting these targeted caseloads. Geographic consideration seems to play a role in the ability of AMHD to recruit for these positions. Caseload assignments for Intensive Case Management and Targeted Case Management Services were consistently over the designated ratios.

Timeliness of eligibility assessments is critical in order to meet the access requirements of the Community Plan. The availability of immediate appointments is variable across the centers which in turn lengthens the process of assignment to a case manager. As the number of case managers increases there is expected to be improvement which will reduce the time lag that exists in the system for movement of those determined eligible into active treatment.

The hiring of a Case Management Coordinator for each Center is behind the time line. This is the same finding as the previous evaluation visit. This position is important for ensuring that the training and supervision of case managers is provided. The ability of the Case Management Coordinators to supervise the case managers appears quite variable across the system. Although the provision of direct care is required in the Plan, several of the Case Management Coordinators have assumed a full caseload in order to service the number of referrals within their Center. **AMHD needs to prioritize the hiring Case Manager Coordinators in each CMHC.**

AMHD has taken steps to improve the linkages for consumers receiving Intensive Case Management Services from POS Providers and the provision of psychiatry services. POS Providers may now utilize the POS psychiatrist for medication management. This is a welcomed improvement to the system. This policy change will decrease the fragmentation in care that previously existed for the consumer. Previously the ability of the ICM team to schedule treatment planning meetings where the consumer, case manager and physician were present was exceedingly difficult and often unattainable. This structure should, without exception, support that coordinated treatment planning will occur on a regular basis. Due to the severity of illness of these consumers, the need for continuity of care and careful coordination of services is essential.

The AMHD Discharge Continuity of Care Project has identified the need for improvement in the linkage between the inpatient treatment team and the community case manager. It was evident in the Sentinel Events discussed previously in this report and in the review of the HSH Clinical Summaries, that the level of involvement by

the community case manager with the inpatient treatment team was a contributing factor in determining treatment success or treatment failure.

## Psychosocial Rehabilitation Services (PSR)

The planning and development of PSR Services that are included in the Community Plan continues to progress under the leadership Edward Suarez PhD. Although the time line for completion of PSR service development is 11/30/05, the stumbling blocks that have prevented meeting this due date are related to the ability of AMHD to resolve ongoing space issues. This is particularly an issue with the development of the Kona Clubhouse. There is an inordinately lengthy time delay in acquiring and renovating space that impacts service development across the system. This has been mentioned in previous reports. In order to progress, AMHD may need to request the assistance of the DOH Director to facilitate movement at a higher level.

Another area that needs attention is the development of the Community Spiritual Care Coordinator Position description so that this item in the Plan meets compliance. This provision of spiritual care is included in the array of PSR services required. There needs to be attention paid to developing PSR services on Kauai.

There continues to be an incredible array of Hawaii Clubhouse Communities throughout the State that supports a strong recovery based model. I toured the Waipahu Clubhouse with Kathleen Rhoades during this site visit and was very impressed by the resources and supports available to empower the consumer towards learning the skills necessary for obtaining employment. The development of a Clubhouse is in the planning stages on Molokai.

The PSR SWIT has focused their efforts on emphasizing the engagement of consumers in developing vocational goals from the point of intake into the AMHD system of care. In the future the goal will be to transition from supported employment to competitive employment. This will be an exciting process to watch.

## AMHD Provider Relations

Mr. John Carollo assumed the position of the Provider Relations Director shortly after the previous evaluation visit. Since that time the elements of the Community Plan that are required in this area have progressed although in some areas without his involvement. The Plan stipulates that a full-time Director will be hired who will have the authority and accountability to accomplish each element related to Provider Relations. As of the evaluation visit there were significant actions occurring with the Provider community that did not involve the Provider Relations Director.

Dr Hester has been conducting a monthly roundtable discussion with the POS Provider Directors to elicit their concerns and inform them about changes with

Hanson-Mayer, Gail-Community Plan Report 01.18.06

16

AMHD Policies and Procedures that impact the functioning and day to operations of the POS Provider group. This meeting has provided a forum for the POS Providers to meet directly with AMHD leadership on a regular basis. The Provider Relations Director as of December 2005 had not been included in this meeting. The POS Providers have developed a positive working relationship with Mr. Carollo. It is logical that he would be involved in this meeting and would be the point person for resolving issues raised in this meeting.

AMHD developed and implemented the Provider monitoring process which was conducted during the previous six months. This process was experienced by the Providers as overly burdensome and time consuming for the Providers. Feedback from AMHD to the Provider community was experienced as being critical and unhelpful. The monitoring process was developed through Provider Management without consultation or coordination of the Provider Relations Director. This task is listed as a requirement for this position under the Community Plan. It would make sense that at the very least there would be a collaborative, participatory discussion and process between Provider Management and Provider Relations in order to successfully facilitate this process. AMHD excluded Mr. Carollo from the development of this process and as a result there is a strong negative reaction that permeates the provider community.

In meeting with the Provider community the issue of timely provider payments was raised. This is not a new issue but is a concerning one. The ability of AMHD to develop open lines of communication between the fiscal department and the providers to solve payment problems continues to be nonexistent. Providers are unable to get answers to questions related to their financial concerns. In order for AMHD to provide the services required by the Community Plan, a working partnership with the Provider community is critical.

At this time, Provider Relations is not compliant with the elements of the Plan and is past due for completion.

## Treatment Planning

**Since the previous evaluation visit there were sporadic areas of progress in the implementation of treatment planning but there was a serious lack of progress on a systemic level.** Although this indicator is not due at this time, the Plan time line for implementation is only two and a half months past the evaluation visit. With such a tight timeframe, it is hard to envision that AMHD will be able to meet compliance with Plan. Due to the fact that recovery treatment planning plays a role in all aspects of the service delivery system, AMHD may be beyond the time available to attain compliance in this area. The plan to move the planning process beyond the current stage needs to be fast tracked. Even with this it is unlikely that this can be completed by 2/06. The Chief of Clinical Operations, Karen Krahn, has been tasked with

providing the leadership. She will need the support of the AMHD Medical Director, Dr William Sheehan, in order to advance the treatment planning process with the CMHC Medical Staff and POS physicians. The participation of the physician in the development of the treatment plan is a requirement of the Community Plan. This has been an area of weakness cited previously.

The Individual Service Plans reviewed demonstrated some modest improvement in the documentation of meaningful goals and objectives. This gave the indication that the training provided by AMHD was helpful for the community in developing some expertise. The training was comprehensive in scope and well received by the staff. The difficulty appeared to lie with the ability to translate into practice the skills learned during the training in a consistent fashion throughout the system. AMHD has incorporated the concepts of a train the trainer program in order to have more experts available within the system. This is a positive step towards advancing this system wide initiative but is late in the process.

The areas of the ISP that were most strikingly deficient were the following: **Crisis Planning**: the records reviewed were not inclusive of a comprehensive crisis plan that would be useful to the consumer, crisis clinicians or Access line Staff. The plans primarily designated specific clinical individuals to be contacted but did not denote the steps that were to be taken if and when a crisis occurs that the consumer identified would be helpful for them. The absence of crisis plans was evident in the documentation of Sentinel Events as well. **Discharge Planning**: the evidence of a discharge plan that moved with the consumer from one level of care to another was lacking. Information that was critical to the case was often missing. The inclusion of expert community resources, i.e. the forensic coordinator, in evaluating the readiness of the consumer for discharge and creating discharge criteria was uniformly not present. If you consider the number of high risk discharges from HSH to the community that have resulted in re-admission (42%) within two months of discharge, it is a high priority for these systems issues to get resolved. This indicator is not met.

## TABLE

**See attached report grid. This grid is a combined report of the findings of Dr Minkoff, Dr Gorman and myself.**

## CONCLUSION

In summary, AMHD is at a critical point. There are six months left in the time line for meeting compliance with the Community Plan. With several indicators that remain outstanding, AMHD must push forward with a focused effort towards meeting substantial compliance. The AMHD action plan set forth for this time period is aggressive and will require close monitoring. Even if AMHD is able to stick to their own internal time line for completion of the outstanding elements of the Community Plan, it is my opinion that it will be very difficult for AMHD to achieve compliance by June 2006. AMHD is only now starting to address areas of the Community Plan that are two years beyond the original time line. Any delay in accomplishing these action items, will likely result in a further extension of the current due dates beyond June 2006. The ability of the new senior leadership team to work collaboratively with the Service Area Administrators, Service Directors, Managers and Staff will be a determining factor in whether AMHD will able to reach this goal. There was some evidence during the evaluation that this was starting to emerge. The system wide issues raised in my previous reports, i.e. crisis services, forensic services and recovery treatment planning, have not been adequately addressed. There is a sense that AMHD has begun to put together the building blocks of their foundation which creates a framework for delivering a quality driven, sustainable system of care. However, in order to meet the June 2006 deadline my overarching key recommendations continue to be the following:

> ➢ Develop a strong leadership structure that directs and guides the AMHD system of care at all levels of the organization.
> ➢ Focus on building the infrastructure necessary to support the AMHD system of care.
> ➢ Take immediate action steps that will focus on the development of community based forensic programs identified in the Plan. Evaluate on a weekly basis progress. This area has been identified as seriously behind the time line and in danger of not meeting the June 2006 deadline. Evaluate whether the resources devoted to this area are adequate to meet the goal.
> ➢ Implement system wide recovery treatment planning throughout AMHD clinical programs. Ensure that the recovery plan is consumer based and is utilized fluidly throughout the system.
> ➢ Eliminate the existing barriers that limit continuity of care for consumers. Implement the blended case management model within the CMHCs and POS providers.
> ➢ Monitor the implementation of the crisis service contract. Ensure that crisis services are responsive and accessible. It is important that each county has a crisis program as defined in the Community Plan in place.

> ➤ Utilize the Sentinel Event Review process developed to guide the system toward identifying further improvements. Although the outcome is for there to be as few Sentinel Events as possible, each occurrence provides an opportunity for system improvement.
> ➤ Hire the vacant and pending vacant positions required in the Plan: Service Area Administrators for Hawaii and Kauai, Case Management Service Director, MI/SA Coordinators and Case Management Coordinators for each CMHC, Performance Management Director, CMHC Manager and CMHC Medical Directors.

I want to especially thank the AMHD Staff for their time in preparation for this site visit and for their valuable input. I continue to be impressed by the level of commitment on the part of the AMHD Staff to provide quality care for the consumers in the State of Hawaii. I hope that my comments and observations are helpful in guiding AMHD in the process of meeting the compliance with the Community Plan by June 2006.

Respectfully Submitted,

Gail Hanson-Mayer APRN, BC, MPH
Nurse Expert
Vice President, Sterling Resources LLC